## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

Docket Number(s): __24-2141__

Caption [use short title]

Motion for: __Dismissal of Plaintiff's Appeal__

Ricky Hill

Plaintiff-Appellant

v.

Major League Soccer, L.L.C.

Defendant Appellee

Set forth below precise, complete statement of relief sought:

Defendant-Appellee Major League Soccer, L.L.C. seeks
to dismiss Plaintiff-Appellant Ricky Hill's appeal because
after his appeal was placed in default, he failed to file his
Forms C and D by the October 1 deadline set by the Court.
Hill was advised by Court Order that his failure to file
his Forms C and D by October 1 would result in dismissal of his appeal.

MOVING PARTY: __Defendant/Appellee__     OPPOSING PARTY: __Plaintiff/Appellant__

☐ Plaintiff    ☑ Defendant

☐ Appellant/Petitioner    ☑ Appellee/Respondent

MOVING ATTORNEY: __Elise Bloom__     OPPOSING ATTORNEY: __Steven Shebar__

[name of attorney, with firm, address, phone number and e-mail]

Proskauer Rose LLP

Eleven Times Square, NY, NY 10036

212-969-3000; ebloom@proskauer.com

Shebar Law Firm

0N370 Fanchon Street, Wheaton, IL 60187

630-877-6833; steveshebar@shebarlaw.com

Court- Judge/ Agency appealed from: __Honorable John G. Koeltl, SDNY Case No 1:23-cv-02911__

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No If yes, enter date:_____

Signature of Moving Attorney:

__/s/ Elise M. Bloom__ Date: __10/10/2024__   Service : ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

PROSKAUER ROSE LLP
Elise M. Bloom
Noa M. Baddish
11 Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendant-Appellee*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RICKY HILL,                                 :
                                            :          Appeal No. 24-2141
              Plaintiff-Appellant,          :
                                            :
         against                            :
                                            :
MAJOR LEAGUE SOCCER, L.L.C.,                :
                                            :
                                            :
              Defendant-Appellee.           :
                                            :
                                            :
                                            :
                                            :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT-APPELLEE'S MOTION TO DISMISS</u>**

## RULE 26.1 STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the

undersigned counsel of record for Defendant-Appellee, Major League Soccer,

L.L.C., certifies that it has no parent companies and there are no publicly held

corporations that own 10% or more of its stock.


Dated:    October 10, 2024                Respectfully submitted,

                                          */s/ Elise M. Bloom*
                                          _____
                                          Elise M. Bloom
                                          Noa M. Baddish
                                          Eleven Times Square
                                          New York, New York 10036
                                          (t) (212) 969-3000
                                          (f) (212) 969-2900
                                          ebloom@proskauer.com
                                          nbaddish@proskauer.com
                                          *Attorneys for Defendant-Appellee*

## <u>TABLE OF CONTENTS</u>

RELEVANT BACKGROUND ...................................................................1

ARGUMENT ........................................................................................2

CONCLUSION .....................................................................................4

Defendant-Appellee Major League Soccer, L.L.C. ("MLS") submits this memorandum of law in support of its Motion to Dismiss Plaintiff-Appellant Ricky Hill's ("Hill") appeal for failure to timely file his Forms C and D by October 1, 2024 as required by the Court's Orders. (Dkt. Nos. 11-12.)

## **RELEVANT BACKGROUND**

On July 10, 2024, the Honorable John G. Koeltl granted MLS's motion to dismiss Hill's complaint in its entirety, with prejudice. (S.D.N.Y. Case No. 1:23-cv-02911 at Dkt. No. 130.) Hill filed his notice of appeal of Judge Koeltl's decision on August 9, 2024, which was the deadline for him to do so. (*Id.* at Dkt. No. 132.)

Hill was required to pay the appellate filing fee and file his Forms C and D by August 23, 2024. (*See* Dkt. Nos. 10.1, 11.1, and 12.1.) Hill's counsel was required to file his acknowledgment and notice of appearance by August 28. (*See* Dkt. No. 13.) Neither Hill nor his counsel complied with any of those obligations.

On September 17, 2024, this Court deemed Hill's appeal in default in four separate orders. (Dkt. Nos. 10.1, 11.1, 12.1, and 13.) In each one, this Court stated that "the appeal will be dismissed effective October 1, 2024" if Hill or his counsel did not pay the filing fee, file the Forms C and D and file the acknowledgment and notice of appearance by that date. On September 18, Hill's counsel filed the acknowledgment and notice of appearance, which were ultimately rejected as

1

defective.  (Dkt. Nos. 14 and 15.)  On September 26, Hill's counsel re-filed the

acknowledgment and notice of appearance.  (Dkt. No. 16.)  On the October 1

deadline, Hill paid the filing fee.  Hill, however, did not file the Forms C or D on

October 1, nor did he notify counsel for MLS at any time that he needed additional

time to do so.

## ARGUMENT

After declaring Hill's appeal in default due to his repeated failure to meet

any of the required deadlines, this Court clearly instructed Hill that his failure to

file his Forms C and D would result in dismissal of his appeal.  The Court's Orders

are consistent with the procedures set forth on its website, which provide:

> If a counseled or pro se appellant or petitioner fails to file a form . . .
> by the date set in FRAP, a LR, or a Court order, that party will be
> deemed in default.  The Court will issue an order that sets a firm
> dismissal date to occur if the default is not cured within a specified
> time frame.

*See https://www.ca2.uscourts.gov/clerk/case_filing/appealing_a_case/civil_case/*

*failure_to_file.html#:~:text=A%20party%20that%20files%20a,an%20exhibit%20t*

*o%20the%20motion.*

Hill's disregard of the Court's firm deadline of October 1 to file his Forms C

and D therefore requires dismissal of his appeal.  *See Marquess v. Cardflex, Inc.,*

No. 22-1822, 2022 WL 18694512, at *1 (2d Cir. Nov. 21, 2022) (dismissing

appeal due to appellants' failure to comply with court's orders to file Form D and

Acknowledgement and Notice of Appearance by date certain); *United States v. Pomales*, No. 20-3137, 2021 WL 7502179, at *1 (2d Cir. Aug. 2, 2021) (dismissing appeal due to appellant's failure to file Form B and Acknowledgment and Notice of Appearance after appellant "was advised that failure to timely file the forms may result in the appeal being dismissed").

This is not an isolated incident of Hill missing one court-ordered deadline. He missed prior deadlines in the instant appeal, which resulted his appeal being placed in default. Hill also exhibited a pattern of missing court-ordered deadlines before Judge Koeltl. MLS filed two motions to dismiss in the district court proceedings. In connection with both, the parties agreed to a briefing schedule, and Hill subsequently requested last-minute extensions of time to file his oppositions to which MLS consented. Hill then missed the already extended deadlines and waited until well after those deadlines passed to seek any relief from that court. (*See* S.D.N.Y. Case No. 1:23-cv-02911 at Dkt. Nos. 103, 104, 105, 125, 126.) Here, Hill did not bother to seek any relief from the Court or communicate in any regard with counsel and instead filed his Forms C and D after the October 1 deadline. Hill's repeated disregard of Court-ordered deadlines should not be condoned, and the Court should enforce its Orders and dismiss Hill's appeal.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant-Appellee's Motion to Dismiss should be granted.

Dated:  New York, New York          PROSKAUER ROSE LLP
          October 10, 2024

                              By: */s/ Elise M. Bloom*

                                 Elise M. Bloom
                                 Noa M. Baddish
                                 Eleven Times Square
                                 New York, NY  10036
                                 Phone: (212) 969-3000
                                 Fax: (212) 969-2900
                                 ebloom@proskauer.com
                                 nbaddish@proskauer.com

                                 *Attorneys for Defendant-Appellee*

# <u>Exhibit A</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

RICKY HILL,

                      Plaintiff,            23-cv-2911 (JGK)

        - against -               MEMORANDUM OPINION AND
                                            ORDER

MAJOR LEAGUE SOCCER LLC,

                      Defendant.
————————————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff, Ricky Hill, asserts claims of race-based employment discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 ("Section 1981"), against the defendant, Major League Soccer, LLC ("MLS").

    The plaintiff initially brought this action in the United States District Court for the Northern District of Illinois against six professional soccer clubs -- AMB Sports & Entertainment, LLC (d/b/a Atlanta United FC); Inter Miami CF, LLC; Tepper Sports & Entertainment (d/b/a Charlotte FC); Prodigal Soccer, LLC; Memphis 901 FC, LLC; and Las Vegas Soccer, LLC (collectively, the "Clubs") -- and two professional soccer leagues -- the United Soccer Leagues, LLC (the "USL") and MLS. Each of the defendants moved to dismiss, and Judge Jorge L. Alonso dismissed the plaintiff's claims against the Clubs and the USL. Hill v. AMB Sports & Ent., LLC, No. 22-cv-2961, 2023 WL

1

2058066, *1, *9 (N.D. Ill. Feb. 16, 2023). As to MLS, Judge
Alonso found that the Northern District of Illinois was not the
proper venue and transferred the action to the Southern District
of New York pursuant to 28 U.S.C. § 1406(a). See id. at *8.

On January 11, 2024, this Court held a conference regarding
MLS's motion to dismiss the plaintiff's original Complaint. See
ECF No. 111. Following that conference, this Court provided the
plaintiff with an opportunity to file an Amended Complaint. On
January 30, 2024, the plaintiff filed a First Amended Complaint
(the "Amended Complaint"). See First Am. Compl. ("FAC"), ECF No.
116; see also Defs.' Mem. Supp. Mot. to Dismiss at 7, ECF No.
118 (discussing procedural history).

MLS now moves to dismiss the plaintiff's Amended Complaint
for failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6). See ECF No. 117. For the reasons stated
below, the defendant's motion to dismiss is **granted.**

**I.**

Unless otherwise indicated, the following facts are taken
from the Amended Complaint, see generally FAC, and are accepted
as true for purposes of deciding this motion.[1]

---

[1] Unless otherwise noted, this Memorandum opinion and Order omits all internal
alterations, citations, footnotes, and quotation marks in quoted text.

**A.**

The plaintiff is a Black man who is "an internationally acclaimed soccer player, and highly successful and decorated coach of professional men's soccer teams." FAC ¶¶ 1-2. The plaintiff was "an elite level football player in England from 1976 to 1989, which included playing on the England national football team . . . from 1982 to 1986." Id. ¶ 18. Between 1992 and 2014, the plaintiff achieved numerous successes as a coach and technical director, including being voted coach of the year on three occasions and leading his teams to championships. Id. ¶¶ 19-26.

MLS is the first division professional soccer league in the United States. Id. ¶¶ 11, 24. Between late 2014 and mid-2021, the plaintiff applied for coaching and technical positions at each of the six Clubs, which are affiliated with MLS. Id. ¶¶ 2, 47-103. Three of the Clubs -- Atlanta United FC, Inter Miami CF, and Charlotte FC -- are "members" of MLS. Id. ¶¶ 47, 67, 92.[2] The plaintiff alleges that each of these three Clubs "hired one or more white or other non-Black candidates for those positions, each of whom was, at the time, objectively less qualified than [the plaintiff] for the position." Id. ¶ 4. The plaintiff

---

[2] The plaintiff refers to Clubs that are "members" of MLS because they are allegedly "owned and operated" by MLS. See FAC ¶ 3 ("Each of the Clubs identified herein [Atlanta United FC, Inter Miami CF, and Charlotte FC] . . . are owned and operated by the Defendant, Major League Soccer, LLC . . . .").

3

alleges that neither MLS nor its Clubs responded to the plaintiff's request for an explanation regarding these hiring decisions. Id. ¶ 5.

### B.

The plaintiff relies on the structural documents of MLS, including the "MLS Constitution," to support the plaintiff's claims of discrimination. The plaintiff alleges that the MLS Constitution was effective, at the latest, in 2019. Id. ¶¶ 30-31. The MLS Constitution contains two provisions entitled "Diversity Initiative" and "Team Personnel." Id. ¶¶ 31, 34. The plaintiff alleges, "upon information and belief," that MLS failed to comply with the Diversity Initiative, id. ¶¶ 32-33, and that pursuant to the Team Personnel provision, MLS asserts control over "every contract of employment, including those of prospective head coaches[.]" Id. ¶ 35.

### 1.

Regarding the Diversity Initiative, the plaintiff asserts that this provision is aimed at "facilitat[ing] the process of consideration of minorities for coaching staff positions," and requires each Team Operator to notify the league of available positions and "interview at least one (1) minority candidate for such available position." Id. ¶ 31. As alleged in the Amended Complaint, this provision further states that in the event of a failure to comply with the initiative, the League Commissioner

"shall have the authority to impose sanctions in the Commissioner's sole discretion." Id.

The plaintiff alleges that for each open position, a non-Black candidate was hired instead of him, and that MLS and its member Clubs failed to comply with the Diversity Initiative set out in the MLS Constitution. Id. ¶¶ 64, 66, 91, 102. The plaintiff further alleges that no Club was ever sanctioned for failing to comply with the requirement that at least one minority candidate be interviewed for each available head coach position. Id. ¶¶ 33.

### 2.

The plaintiff next alleges that pursuant to the "Team Personnel" provision, MLS has the power to review every employment contract created by the Clubs. Id. ¶¶ 34-35. As alleged in the Amended Complaint, the Team Personnel provision states that every member of MLS, including each Team Operator, must comply with all League rules. Id. ¶ 34. This provision further states that employees of Team Operators are subject to the jurisdiction of MLS and bound by the League's rules, and that each contract of employment must be submitted to MLS's legal department "within three (3) business days . . . for MLS's review and approval with respect to compliance with any applicable League Rules." Id. Based on this provision, the plaintiff asserts that "every contract of employment, including

5

those of prospective head coaches, is subject to MLS'[s] review and approval." Id. ¶ 35.

## C.

Finally, the plaintiff alleges that MLS recognized racial disparities in the League's hiring of head coaches. See, e.g., id. ¶ 40. The plaintiff points to several news articles, including those that appeared in The New York Times and The Athletic, which allegedly highlight the underrepresentation of Black players and Black head coaches within MLS. See id. ¶¶ 36, 38. The plaintiff further alleges that MLS has admitted that it "has a league-wide problem with racism," and "in particular, embedded practices that exclude Blacks from high level coaching and technical positions." Id. ¶ 40.

In 2007, MLS announced in its website a "Coaching Diversity Initiative" aimed at providing more opportunity for diversity among the coaching staff. Id. ¶ 39. On October 19, 2020, MLS announced a new set of initiatives on its website to combat racism and increase "Black representation in the sport." Id. ¶ 41. The plaintiff alleges that MLS's efforts to address racism in its hiring practices demonstrate its power to "both participate in and control the clubs' hiring practices, specifically including those governing the hiring of people of color in head coach positions." Id. ¶ 44.

**D.**

The plaintiff alleges that despite efforts taken by MLS to address racism in hiring, MLS discriminated against the plaintiff on the basis of his race and that he was not given appropriate consideration for open positions. Id. ¶¶ 66, 91, 102.

In October and November 2021, the plaintiff filed charges of discrimination against the defendant with the Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 14. The EEOC thereafter issued a Notice of Right to Sue with respect to the plaintiff's claims. Id. ¶ 15. In the plaintiff's Amended Complaint, the plaintiff asserts discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, see id. ¶¶ 104-117, and discrimination in violation of 42 U.S.C. § 1981, see id. ¶¶ 118-123.

**II.**

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is

legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

### III.

The defendant moves to dismiss the plaintiff's Title VII and Section 1981 employment discrimination claims for failing to state a plausible claim for relief pursuant to Rule 12(b)(6). See Defs.' Mem. Supp. Mot. to Dismiss at 8. The Court will address each claim in turn.

### A.

Title VII provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S. Code § 2000e-

2(a)(1). "[T]o defeat a motion to dismiss . . . in a Title VII
discrimination case, a plaintiff must plausibly allege that (1)
the employer took adverse action against him, and (2) his race,
color, religion, sex, or national origin was a motivating factor
in the employment decision." Vega v. Hempstead Union Free Sch.
Dist., 801 F.3d 72, 87 (2d Cir. 2015). "At the pleadings stage,
then, [the] plaintiff must allege that the employer took adverse
action against [him] at least in part for a discriminatory
reason, and [he] may do so by alleging facts that directly show
discrimination or facts that indirectly show discrimination by
giving rise to a plausible inference of discrimination." Id.

**1.**

An essential element of a failure to hire claim under Title
VII is the allegation that the plaintiff applied for a position
with the defendant employer and was rejected. Felder v. United
States Tennis Ass'n Inc., No. 17-cv-5045, 2018 WL 5621484, at *3
(S.D.N.Y. Oct. 30, 2018). In Felder, the Court dismissed the
plaintiff's employment discrimination claims against the United
States Tennis Association ("USTA") when the plaintiff alleged
that the USTA rejected the attempts of a security subcontractor
to secure a temporary security employment position for the
plaintiff. See id. The Court pointed out that the plaintiff had
not sought a position with the USTA. In this case, like the
plaintiff in Felder, the plaintiff does not allege that he

applied for and was rejected for a position with MLS. Instead, the plaintiff alleges that he was not hired by Atlanta United FC, Inter Miami CF, and Charlotte FC, which are Clubs that the plaintiff alleges are owned by MLS. See, e.g., FAC ¶ 12. Indeed Judge Alonso dismissed the plaintiff's claims against the USL because the plaintiff had not alleged that the plaintiff had applied for employment with the USL. See ECF No. 87 at 17.

The plaintiff contends that MLS and its Clubs are "one and the same," and therefore that the "single employer doctrine" should apply to the plaintiff's claims. See ECF No. 128 at 2. For the reasons that follow, the plaintiff has not alleged sufficient facts to establish that the single-employer doctrine applies to the plaintiff's claim.

### i.

The single-employer doctrine applies "where two nominally separate entities are actually part of a single integrated enterprise," such as a parent and its wholly-owned subsidiary or separate corporations under common ownership or management. See Chavannes v. Bronx Parent Housing Network, Inc., No. 21-cv-5060, 2022 WL 4124762, at *3 (S.D.N.Y. Sept. 9, 2022) (citing Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)). A four-part test determines whether a single-employer relationship exists. The test requires a plaintiff to show: "(1) interrelation of operations, (2) centralized control of labor

relations, (3) common management, and (4) common ownership or
financial control." Id. (citing Brown v. Daikin America, 756
F.3d 219, 226 (2d Cir. 2014)). No one factor is dispositive, but
courts focus their analysis on the second factor: centralized
labor concerns. Id.; Schade v. Coty, Inc., No. 00-cv-1568, 2001
WL 709258, at *6 (S.D.N.Y. June 25, 2001) (citing Cook v.
Arrowsmith Shelburne, Inc., 69 F.3d at 1241 (2d Cir. 1995)). The
critical question to be answered is: "What entity made the final
decisions regarding employment matters related to the person
claiming discrimination?" Schade, 2001 WL 709258, at *6 (citing
Cook, 69 F.3d at 1240).

Generally, deciding whether two entities are sufficiently
integrated for purposes of the single-employer test is "a
question of fact not suitable to resolution on a motion to
dismiss." Brown, 756 F.3d at 226. However, a plaintiff still
"must do more than simply state legal conclusions and recite the
elements of the single employer standard to survive a motion to
dismiss." Fried v. LVI Services, Inc., No. 10-cv-9308, 2011 WL
2119748, at *5 (S.D.N.Y. May 23, 2011). The plaintiff in this
case has failed to meet that standard.

**ii.**

In this case, the plaintiff does not allege plausibly any
facts supporting the notion that MLS participated in the Clubs'
individualized decisions not to hire him. There are no specific

11

allegations that any MLS officials had any input into the decision whether to hire the plaintiff for a coaching position with any of the three Clubs. Rather the plaintiff relies on a broad diversity initiative that should have made it more likely that he would have been hired, not less likely. The plaintiff states in a broad, conclusory fashion that "every contract of employment . . . is subject to MLS'[s] review and approval[,]" FAC ¶ 35, and that "MLS both participates in and controls the clubs' hiring practices, specifically including those governing the hiring of people of color in head coach positions." Id. ¶ 44. These allegations, standing alone, are insufficient to establish a single-employer relationship, and the plaintiff provides no facts to support the plaintiff's allegations that MLS controlled the Clubs' hiring and firing practices. See, e.g., Chavannes, 2022 WL 4124762, at *4 (finding that the specific facts alleged in an employment discrimination action did not support the existence of a single-employer relationship, or demonstrate that employer-defendant in that case possessed "control and input" over the hiring and retention of the plaintiff).

Moreover, the plaintiff's arguments in support of those theories largely come in the form of conclusory statements. The plaintiff alleges that each Club is owned by MLS and individually operated by the League's investors. FAC ¶ 28. The

plaintiff further alleges that MLS owns all club contracts and controls all league business, "from TV deals, to jersey sponsorships, to employment contracts." Id. ¶ 29. But these statements are unrelated to each Club's decision whether to hire the plaintiff.

The plaintiff then shifts his focus to the Diversity Initiative and the Team Personnel provisions of the MLS Constitution. See id. ¶ 31, 34. The plaintiff alleges that neither MLS nor any member Club complied with the Diversity Initiative with respect to his candidacy, and that no Club was sanctioned as a result of that failure to comply. Id. 32-33. But these allegations are not related to the question whether MLS participated in the Clubs' decision not to hire the plaintiff.

The plaintiff's sole allegation with respect to the Team Personnel provision is that every employment contract is subject to MLS's review and approval. Id. ¶ 35. But the plaintiff's citations to the Diversity Initiative and the Team Personnel provisions of the MLS Constitution do not provide a sufficient factual basis to support the plaintiff's allegation that MLS was involved in the decision not to hire him. In fact, the MLS Constitution clarifies that Team Operators, not MLS, hires and employs coaches in the League. See id. ¶ 31; see also Bloom Decl., Ex. 1, ECF No. 121-1 at § B; Defs.' Mem. Supp. Mot. to Dismiss at 1-2, 12. In any event, because the plaintiff failed

13

to provide factual support for his assertion that MLS participated in the decision not to hire him, the plaintiff has not pleaded a sufficient basis to hold MLS liable for the Team Operator's hiring decisions.

Finally, the plaintiff alleges that MLS's acknowledgment of racial disparities within the league and the announcement of new hiring policies on its website indicate that MLS controls and participates in the Clubs' hiring practices. See FAC ¶ 36-44. The plaintiff further alleges that MLS's new hiring policies are binding on the Clubs. Id. ¶¶ 39, 44. These arguments fail to allege facts showing that MLS was actually involved in the decision of the three Clubs not to hire the plaintiff.

The plaintiff refers to the acknowledgment by MLS of racial disparities, but fails to explain the relationship between these public statements and the decision by the three Clubs not to hire him. Furthermore, while the MLS Constitution provides that Team Operator's and employees are bound by "League Rules," id. ¶ 34, the plaintiff does not assert that the alleged hiring policies announced in MLS's website constitute "League Rules" as stated in the MLS Constitution. The plaintiff simply states that because of the alleged ability to create binding hiring policies, MLS participates in and controls the hiring practices of the Clubs. See id. ¶¶ 39, 44. Broad assertions about policy are not sufficient to survive a motion to dismiss, which

14

requires the complaint to contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Regarding the plaintiff's allegations of the remaining elements of the single-employer test, the defendant correctly argues that these are wholly conclusory and without factual support. Defs.' Mem. Supp. Mot. to Dismiss at 14 n.12. To support the plaintiff's argument, the plaintiff stresses the importance of MLS ownership of the Clubs due to its "single-entity" structure. FAC ¶¶ 3, 11-12, 27-29. The plaintiff asserts that "[i]nstead of operating as an association of independently owned clubs, MLS is a single entity in which each team is owned by the league and individually operated by the league's investors." Id. ¶ 28.

MLS admits that most of the Clubs' intellectual property and player contracts are owned by MLS, but it correctly asserts that mere allegations of common ownership are insufficient to demonstrate single-employer status. See Defs.' Reply at 2-3, ECF No. 129; see Schade, 2001 WL 709258, at *9 (absent a showing of meaningful participation in employment and labor decisions, ownership status alone is insufficient to consider the entities a single employer). The single-employer analysis centers on the question of which entity made the ultimate decision regarding the plaintiff's employment status. See id., at *8. The plaintiff

15

has failed to allege sufficient facts to support the contention
that MLS made the ultimate decision not to hire the plaintiff.
For the foregoing reasons, the plaintiff has failed to allege
plausibly that MLS and its member Clubs are a single employer
for purposes of the plaintiff's Title VII claim.

**2.**

The plaintiff also raises a theory of disparate impact with
regards to MLS's "facially neutral policy of non-
intervention[.]" FAC ¶ 115. However, the Amended Complaint does
not allege a plausible theory of disparate impact. "To make out
a prima facie case of disparate impact, a plaintiff must (1)
identify a policy or practice, (2) demonstrate that a disparity
exists, and (3) establish a causal relationship between the
two." Darrell v. Consolidated Edison Co. of New York, Inc., No.
01-cv-8130, 2004 WL 1117889, at *7 (citing Malave v. Potter, 320
F.3d 321, 325 (2d Cir. 2003)).

The plaintiff has failed to make out a prima facie case of
disparate impact. The plaintiff has made no showing that MLS's
acknowledgment of underrepresentation of Black people among the
coaching staff, see, e.g., FAC ¶¶ 36-46, and delegation of anti-
discrimination compliance to managers at the Club level, see id.
¶¶ 23-33, supports his disparate impact claim. Indeed,
"[a]llegations which contend only that there is a bottom line
racial imbalance in the work force are insufficient[]" to state

16

a disparate impact claim under Title VII. <u>Rodriguez v. Beechmont</u>

<u>Bus Serv.</u>, 173 F. Supp. 2d 139, 147 (S.D.N.Y. 2001) (citing

<u>Wards Cove Packing Co. v. Atonio</u>, 490 U.S. 642, 653 (1989),

<u>superseded by statute on other grounds</u>, 42 U.S.C. § 2000e-2(k)).

The Second Circuit Court of Appeals has recognized that the

underrepresentation of Black people "might result from any

number of factors, and it places an initial burden on the

plaintiff to show that the specific factor challenged under the

disparate impact model results in the discriminatory impact."

<u>Lopez v. Metropolitan Life Ins. Co.</u>, 930 F.2d 157, 160 (2d Cir.

1991). In this case, the plaintiff has failed to identify any

specific policy or practice by MLS that impacted any decision to

not hire him. Instead, the plaintiff relies on MLS's diversity

initiatives, acknowledgment of the League's underrepresentation,

and delegation of anti-discrimination policy, without showing

how any of these facts adversely impacted him. For the foregoing

reasons, the plaintiff has failed to allege plausibly any facts

supporting the plaintiff's disparate impact claim.

Accordingly, because the Amended Complaint fails to allege

the elements of a disparate impact claim, the defendant's motion

to dismiss the plaintiff's disparate impact claim is **granted.**

**B.**

Section 1981 provides that "[a]ll persons within the

jurisdiction of the United States shall have the same right in

17

every State and Territory to make and enforce contracts[.]" 42
U.S.C. § 1981(a). As a result, Section 1981 "outlaws
discrimination with respect to the enjoyment of benefits,
privileges, terms, and conditions of a contractual relationship,
such as employment[.]" Patterson v. Cnty. of Oneida, N.Y., 375
F.3d 206, 224 (2d Cir. 2004). On a motion to dismiss, "Section
1981 discrimination claims are analyzed under the same
substantive standard applicable to Title VII discrimination
claims." Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396,
410 (S.D.N.Y. 2014); see also Felder, 2018 WL 5621484, at *3
(applying the same pleading standard to failure-to-hire claims
brought under Title VII and Section 1981).

Therefore, because the plaintiff has failed to allege a
plausible Title VII claim, the plaintiff's Section 1981 claim
also fails. The Amended Complaint fails to allege specific facts
that permit the Court to draw a plausible inference that MLS
failed to hire the plaintiff or otherwise took an adverse action
against him. Therefore, the plaintiff's Section 1981 claim is
**dismissed.**

## IV.

The defendant also moves to dismiss the plaintiff's claims
as time-barred under the applicable statute of limitations. The
plaintiff's communication with the three Clubs resulting in the
alleged failure to hire spans from 2014 to mid-2021. The

plaintiff filed charges of discrimination with the EEOC in
October and November of 2021. For a Title VII claim to be
considered timely, the plaintiff must file a complaint with the
EEOC within 300 days of the alleged discriminatory act. See 42
U.S.C. § 2000e-5(e)(1); Rasko v. N.Y.C. Admin. For Children's
Servs., 734 F. App'x 52, 53-54 (2d Cir. 2018) (summary order).
However, there is a continuing violation exception to the 300-
day limitations period, stating that if a plaintiff files an
EEOC charge alleging discrimination "in furtherance of an
ongoing policy of discrimination, all claims of acts of
discrimination under that policy will be timely even if they
would be untimely standing alone." Chin v. Port Auth. of New
York & New Jersey, 685 F.3d 135, 155-56 (2d Cir. 2012).

Nevertheless, a series of discrete but related acts of
discrimination do not warrant the application of the continuing
violation doctrine. See Samuels v. City of New York, 22-cv-1904,
2023 WL 5717892, at *5 (S.D.N.Y. Sept. 5, 2023). In this case,
the plaintiff's allegations regarding the plaintiff's failed
attempts to obtain employment with MLS Clubs are discrete acts
that are barred by the 300-day statute of limitations period to
the extent they occurred more than 300 days before the
plaintiff's filings with the EEOC in October and November 2021.
See Herman v. City of New York, 21-cv-6295, 2023 WL 6386887, at
*5 (S.D.N.Y. Sept. 29, 2023) (citing Vega, 801 F.3d at 79)

(finding that the plaintiff's claims were time barred with
respect to the claims alleging "discrete but related acts of
discrimination," and finding that these discrete actions include
adverse employment decisions "such as . . . refusal to hire"
because each decision "constitutes a separate actionable
unlawful employment practice"). For this reason, the plaintiff's
claims falling outside of the 300-day period before the filing
of the EEOC claims are time-barred.

**CONCLUSION**

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted**. The Amended Complaint is dismissed with prejudice.[3] The Clerk is directed to close ECF No. 117. The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close this case.

**SO ORDERED.**

Dated:    New York, New York
          July 10, 2024

                                          John G. Koeltl
                                 United States District Judge

---

[3] The defendant filed a motion to dismiss the original complaint. ECF No. 95. The plaintiff responded by arguing its single employer theory and its disparate impact theory, ECF No. 105, neither of which were asserted in the original complaint, ECF No. 1. The Court therefore allowed the plaintiff to file the First Amended Complaint asserting those theories and dismissed the motion to dismiss the original complaint as moot. At the argument of the motion to dismiss the original complaint, the plaintiff's counsel, "without waiving any rights," stated that if the Court allowed the plaintiff to file the First Amended Complaint, it was "most likely true" that he would not ask for another opportunity to file another amended complaint. Jan. 23, 2024 Hearing Tr. at 10, ECF No. 113. The plaintiff has not sought to file another amended complaint.